### Jerome Sertiff, Appellee, v. Armour & Company, Appellant.

1. MASTER AND SERVANT—*falling tank.* In an action by an employe in a packing house to recover damages caused by the falling of a water tank, a recovery is justified where it appears that the servant was not guilty of contributory negligence and the evidence although conflicting further tends to show that a defect in the timbers supporting the tank must have been known to the defendant or could have been ascertained by the exercise of ordinary care in an examination of the same.

2. INSTRUCTIONS—*repetition.* It is no error to refuse an instruction which is substantially embodied in others given.

3. DAMAGES—*when not excessive.* A verdict for $3,000 for personal injuries is not so excessive as to warrant a reversal where the proof shows that the injured person received forty bruises, that he would never have perfect use of his left foot which would always pain him, that his right knee would always remain stiff, and that a depression of the skull had produced general ill health and nervousness.

Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912. Rehearing denied June 13, 1912. *Certiorari* denied by Supreme Court (making opinion final).

MESSICK & MESSICK and KRAMER, KRAMER & CAMPBELL, for appellant.

WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee, Jerome Sertiff, while in the employ of appellant, was injured by the falling of a water tank in the latter's packing house and brought this suit to recover damages.

The declaration contained but one count, which in general terms charged that appellant, so negligently and carelessly maintained and kept a certain floor and tank in its buildings, that in consequence thereof, said floor gave way under the weight of said tank and said floor and said tank and the contents thereof fell and injured appellee, who was employed on the floor on which said tank was located.

The trial resulted in a verdict and judgment in favor of appellee for $3,000.

In answer to special interrogatories given at the request of appellant, the jury found that the building in question was properly constructed for the purposes for which it was used; that appellant had not used reasonable care and diligence to have the timbers and material in the building inspected to ascertain whether they were in a reasonably safe and sound condition for the purposes for which they were being used; and that the evidence showed the accident in question was caused by decayed and defective timber.

Appellant states as reasons why the judgment in this case should be reversed, (1) that the facts did not sustain the verdict, (2) the court erred in refusing its

fourth and fifth instructions and (3) the verdict was excessive.

Appellee contends that there was enough evidence that the timbers supporting the tank were decayed and insufficient to accomplish the purpose for which they were intended to warrant the jury in finding that the tank fell on account of their decayed and imperfect condition; that such condition was known or by reasonable care and diligence could have been ascertained by appellant; also that the falling of the tank was itself proof of negligence on the part of appellant and therefore the doctrine of *res ipsa loquitur,* is applicable.

Appellant on the other hand contends that the evidence showed the injury was caused by the breaking of one of the posts supporting the fourth floor where appellee was working; that such post had been tested a short time before and no defect in it had been discovered; that such post had an imperfect growth or latent defect in the interior, not discoverable by examination or inspection, by ordinary tests and reasonable diligence, which caused it to give way and let the tank fall; that it was not shown that the falling of the tank was occasioned by defective or decayed timbers, in or about the same; also that the doctrine of *res ipsa loquitur* is not applicable to the case or if it is, the proofs on the part of appellant are sufficient to overcome any inference of negligence arising therefrom.

The building in which appellee was employed consisted of four floors, and the tank, which fell and caused appellee's injury, was supported by timbers, extending about ten feet above the fourth floor, on which appellee was at work. In the construction of the building, beginning with the basement floor, iron posts were erected sixteen feet apart throughout the entire floor, four posts constituting what was known as a section. At the top of the posts were placed iron

pieces called T's which projected some twelve inches out from the sides of the posts. Timbers 12x12 inches square extended from post to post, resting on the T's. On the top of the T's and immediately above the upright iron posts, wooden posts 12x12 inches square were placed to constitute the first floor and at the top of these posts were wooden T's similar to the iron ones used in the basement. The same manner of construction was used throughout the different floors. After the fourth floor had been constructed, upright wooden posts were placed resting on the top of the posts on the third floor, but the size of the same was reduced to ten inches square. At the top of these posts, which were some ten feet high, were placed T's or brackets and also beams or timbers the same as on the tops of the posts on the other floors. This construction formed a skeleton for another floor which was not covered over but was used to support a water tank and certain machinery. The tank in question was about sixteen feet long, four feet wide and three feet high and when filled with water, weighed about 10,000 pounds. It rested on two pieces of timber 6x10 inches in size and some sixteen feet long, extending lengthwise under the tank. The ends of these timbers rested on two of the 12x12 inch pieces, which extended from post to post as above stated and formed two sides of that particular section where the tank was located. The crosspieces upon which the tank rested had no support between the timbers on which their ends rested. From this tank, which was usually kept full of water, extended iron pipes attached to which were pieces of hose at the lower ends of which were brushes, used in connection with the water passing through the hose by men standing under the tank to wash beef carcasses, as they were conveyed along in front of them. When the carcasses were washed they were conveyed on a little further where the water was

scraped off with knives by other men, among them being appellee.

On February 14, 1911, appellee was at work near the tank scraping water from a beef carcass with a knife, when without any warning the tank fell. The end coming down first crushed through and carried with it a section of the floor and the tank finally rested on end on the third floor. Several workmen were carried down with the tank, one being killed and the others, among them was appellee, injured. He was found pinned down under the broken timbers about the tank, covered with bruises, his knee cap broken and his left foot severely injured. He was taken to a hospital where he remained two weeks and up to the time of the trial was still receiving medical attention. A considerable amount of rotten and decayed timber was found about the tank and certain of the timbers, which formed the foundation for the tank, were shown to have been in some degree decayed and defective at the ends. It also appeared that an upright post at the southwest end of the section in which the tank was placed, that extended from the third to the fourth floor, was broken about four feet above its base. On the inside of this post was a defect referred to as a curl or knot at the place where it broke, but the evidence tends to show that upon the outside the post seemed to be sound. It also appeared from the evidence of appellant, that it had in its employ a competent man who examined this post as well as the other posts on the third floor about ten days or two weeks before the occasion in question and that they all, at that time, appeared to be sound. It further appeared that the timbers upon which the tank rested had been replaced about four years prior to this time, but it was also shown that the steam and water on that floor had a tendency to rot timbers rapidly and that these timbers had never been examined during the four years.

There was further evidence to the effect that certain of the timbers were sappy or rotten at the ends and

that if a timber used as these were is in such a condition, pressure on it would cause it to crawl to one side and misplace anything that might be above it.

The evidence upon the questions of fact presented was at many points conflicting, but we have considered the record carefully and upon the whole the facts appear to us to sustain the special findings of the jury and the general verdict in favor of appellee.

Appellee was engaged in his usual work and was entirely guiltless of any negligence contributing to his injury. That some defect in the timbers, either inherent or caused by long usage, caused the tank to fall cannot be questioned. If the testimony of witnesses introduced by appellee, a portion of which is to some extent corroborated by the testimony of appellant's witnesses, is to be believed, and we may judge from the exhibit of the timber in evidence, a condition existed in the timbers directly and indirectly supporting the tank which the jury were justified in finding must have been known to the appellant or could readily have been ascertained by it by the exercise of ordinary care in an examination of the same.

The question of *res ipsa loquitur* is ably discussed in the briefs and appellant especially cites and comments upon many cases bearing upon that subject. But we deem it unnecessary to discuss that question, as in our opinion the facts outside of any inference which might be drawn from the application of that doctrine to this case were sufficient to support the verdict in favor of appellee.

Appellant complains of the refusal of the trial court to give its fourth instruction, which told the jury that the mere fact the accident happened and plaintiff was injured did not in and of itself alone entitle plaintiff to recover in this case, nor did it prove or justify the inference that defendant was guilty of negligence as charged in the declaration. Instruction 17 given for appellant directly told the jury that if they believed

from the evidence the injuries to appellee happened to him by mere accident, without fault on the part of the appellant, or its servants, appellee could not recover and the same statement of the law is in effect contained in instruction 11 given for it. The other instructions given on both sides fully and clearly informed the jury that appellee could not recover unless he proved by a preponderance of the evidence that appellant was guilty of the negligence charged in the declaration and that such negligence was the proximate cause of the injury complained of. There was therefore no error in refusing said instruction. Appellant's fifth refused instruction was substantially the same as the fourth refused above referred to, but stated the theory of law involved with more elaboration and for the reasons above given was also properly refused.

In regard to the extent of appellee's injuries, the proof showed that there were some forty bruises on his body; that he would never have perfect use of his left foot and it would pain him as long as he lived; that by reason of the injury to the knee cap, his right knee would be stiff; that there was a depression of the skull on the right side of the head, causing a pressure on the brain which produced nervousness and insomnia and that his general health was not good. While the proof does not show that he had a large earning capacity, prior to the time he was hurt, yet his injuries were so numerous and a few of them so severe, that we do not consider the amount of the judgment excessive to such an extent as to warrant a reversal of the same on that account, and the judgment of the court below will be affirmed.

*Affirmed.*